464 A.2d 355

**Lillian DALEY and Frank Daley, H/W (Appellants at No. 236),**

v.

**JOHN WANAMAKER, INC. (Appellant at No. 407).**

Superior Court of Pennsylvania.

Argued March 15, 1983.

Filed July 22, 1983.

350

John F. Fenerty, Philadelphia, for appellants (at No. 236) and for appellees (at No. 407).

Daniel F. Monahan, Philadelphia, for appellant (at No. 407) and for appellee (at No. 236).

Before CERCONE, P.J., and ROWLEY and CIRILLO, JJ.

CIRILLO, Judge:

On April 8, 1978, the appellant, Lillian Daley went to appellee's Northeast store to attempt to replace some denim pants of a three-piece suit belonging to her son. She had with her, in a bag, the vest to the suit and the pants, which were shrunken and faded. She was unsuccessful in finding a satisfactory replacement for the pants and was in the process of leaving the men's department when she was escorted off of the selling floor by two of appellee's store detectives. In a rather unpleasant scene she was accused of shoplifting the vest in the bag and then was released with her bag containing the pants and vest. She subsequently initiated this trespass action for intentional misconduct including Assault and Battery, Defamation and False Imprisonment. Just before testimony began, the court permitted the appellant to amend her addendum clause to include punitive damages.

The testimony and evidence presented at trial, concerning the incident, was contradictory in almost every respect. When the parties concluded their cases, the Honorable Judge Doty submitted the issue of probable cause to the jury, which returned a verdict in favor of the appellant as to

False Arrest and/or False Imprisonment and Assault and Battery, but in favor of appellee for slander and libel. The jury then rendered a verdict in favor of Lillian Daley in the amount of $20,000.00 for compensatory damages, and $30,-000.00 for punitive damages. The jury also awarded $15,-000.00 to appellant's husband, Frank Daley, for loss of consortium.

The appellee, John Wanamaker, filed post-trial motions for judgment notwithstanding the verdict; for a new trial; and a request for a remittitur. The Court denied appellee's motions, but granted in part the request for remittitur and reduced the verdict in favor of Lillian Daley for punitive damages from $30,000 to $15,000, and, as to Frank Daley, from $15,000 to $5,000 for compensatory damages. The verdict of $20,000 compensatory damages for Lillian Daley, was not reduced. Judgment was then entered on the above sums. Both sides appealed.

On appeal, the only issue raised by appellant was the impropriety of entering the remittiturs. The trial court has the authority to order a remittitur of *excessive* damages. *Ready v. Motor Sport, Inc.*, 201 Pa.Super. 528, 193 A.2d 766 (1963). However, the trial court should not interfere with functions of the jury and undertake to determine facts, which is exclusively the province of the jury. When it is apparent that the jury has returned a verdict excessive in amount and clearly beyond what the evidence warrants, the trial court should set aside or reduce the verdict. *Jones v. Stiffler*, 137 Pa.Super. 133, 8 A.2d 455 (1939). Conversely, if the verdict is supported by evidence, it must be permitted to stand where there is nothing to suggest that the jury was in any way guided by partiality, prejudice, mistake or corruption. *Stoughton v. Kinzey*, 299 Pa.Super. 499, 445 A.2d 1240 (1982). Therefore, it is the duty of the court to enforce the jury's verdict unless the circumstances cry out for judicial interference. *Prather v. H–K Corp.*, 282 Pa.Super. 556, 423 A.2d 385 (1980); *Stoughton, supra.*

Testimony concerning Mrs. Daley's treatment by appellee's employees was widely divergent. Appellee's store

detectives stated that they were at all times pleasant, soft spoken, and mindful of embarrassing the appellant. Mrs. Daley testified that they were rough, rude, and yelled at her. Apparently the jury found the appellant's testimony more convincing.

The decision of whether to award punitive damages and the amount to be awarded are within the discretion of the fact finder. *Focht v. Rabada*, 217 Pa.Super. 35, 268 A.2d 157 (1970); Restatement of Torts § 908(2) (1939). In Pennsylvania, it has been held that the amount of punitive damages must bear a reasonable relationship to the award of compensatory damages. *Hughes v. Babcock*, 349 Pa. 475, 37 A.2d 551 (1944); *Mitchell v. Randal*, 288 Pa. 518, 137 A. 171 (1927). However, this Court has upheld an award of punitive damages where there was no award for compensatory damages. *Rhoads v. Heberling*, 306 Pa.Super. 35, 451 A.2d 1378 (1982).[1]

In the case at bar, the award of punitive damages is only one and a half times the amount of compensatory damages awarded. We cannot say that such an award is improper by law since courts have upheld punitive damage awards proportionally greater than this. *See, Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3rd Cir.1979) (punitive damages six times that of compensatory damages held not excessive). The law in Pennsylvania has not established any fixed ratio between compensatory and punitive damages. Rather, the fact finder should be given broad discretion in assessing an amount which will be sufficient to punish the defendant and set an example to deter him and others from this type of conduct. *Esmond v. Liscio*, 209 Pa.Super. 200, 224 A.2d 793 (1966). Therefore, we cannot say that the jury's award was so excessive as to

1. In *Hannigan v. S. Klein's Department Store*, 1 D & C 3d 339 (affirmed per curiam 244 Pa.Super. 597, 371 A.2d 872 (1976)) the judge granted a remittitur of the punitive damages on the basis that it would bring those damages more in conformance with Pennsylvania case law. However, the decision of this Court in *Rhoads, supra*, has made the rationale of that decision obsolete.

be an error of law. Pennsylvania subscribes to the Restatement of Torts, which in § 908 states as follows:

> e. Amount of damages. In determining the amount of punitive damages, as well as in deciding whether they shall be given at all, the trier of fact can properly consider not merely the act itself but all the circumstances including the motives of the wrongdoer, the relations between the parties, and the provocation or want of provocation for the act (see § 921).

Accordingly, the award of punitive damages was the prerogative of the finder of fact, in this case the jury. We must then determine if the trial judge's reduction of these damages was an abuse of his discretion.

When a trial court reduces the amount of damages awarded, it is of the utmost importance that the reasons for that reduction are clearly preserved in the record. The problem faced by an appellate court in reviewing the record in these situations was addressed by the Supreme Court in *Sciafe Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 290, 285 A.2d 451, 456 (1971) as follows:

> Recognizing the difficult task encountered by an appellate court in reviewing the record when a trial court merely assigns conclusory statements—"interests of justice," "shocks the court's conscience" and "substantial justice"—we have attempted to discourage this practice. *See, Gilligan v. Shaw*, 441 Pa. 305, 272 A.2d 462 (1971); *Hilliard v. Anderson*, 440 Pa. 625, 271 A.2d 227 (1970); *Kralik v. Cromwell*, 435 Pa. 613, 258 A.2d 654 (1969); *Beal v. Reading Co.*, 370 Pa. 45, 87 A.2d 214 (1952); *Bellettiere v. Philadelphia*, 367 Pa. 638, 81 A.2d 857 (1951). In *Hilliard*, the defendant was granted a new trial upon the plaintiff's failure to file a remittitur solely because "the verdict was excessive and shocked the conscience of the court." Primarily concerned with the "shock the conscience" test, we noted, "[t]he court should state the reasons for this conclusion in order that we may have the opportunity of intelligently determining if an abuse of discretion occurred." 440 Pa. at 628, 271 A.2d

at 229. *We now add the "excessive verdict" conclusion to that list of judicial statements requiring additional supporting reasons.* (Emphasis supplied).

In reducing the appellant's punitive damages Judge Doty stated:

> ... As to punitive damages, the jury awarded Lillian Daley $30,000 in punitive damages. This appeared to the Court to be excessive in view of the compensatory damages [$20,000] stated above. Furthermore, there was no actual malice shown.

It would seem that Judge Doty found some problem in the relationship between the compensatory and punitive damages awards. However, as can be seen from the previous discussion the jury's award in this case is well within reasonable bounds. If the trial judge finds that the amount of punitive damages, "is excessive simply because the jury has awarded greater damages than the judge himself would have done [the] amount of the verdict must be such that it shocks the conscience of the court since ordinarily the determination of damages is the province of the jury." *Palmer v. Moren*, 44 F.Supp. 704, 711 (M.D.Pa.1942). The Federal District Court, applying Pennsylvania law, in *Howarth v. Segal*, 232 F.Supp. 617 (E.D.Pa.1964), stated as follows:

> The alleged excessiveness of a verdict must be measured by a 'criterion of shockability'. *Flank v. Walker*, 398 Pa. 166, 171, 157 A.2d 163, 165 (1960). Thus '[t]he law in Pennsylvania is well settled that a jury verdict will be interfered with on the grounds of excessiveness only in cases where it is "so grossly excessive as to shock our sense of justice" '.

*Id.* at 620.

After reviewing the record and all the testimony given at trial, we cannot say that the amount of the damages awarded to the appellant was so great as to shock our conscience. Nor do we find them disproportionate or so excessive as to require the court's intervention. Therefore, we find that the order of the court granting appellee a remittitur was an

abuse of discretion and an invasion into the province of the jury. Thus, the order of the trial court is reversed and the jury verdict in the amount of $30,000 is reinstated.

As to the remittitur of the compensatory damages awarded to the appellant's husband Frank Daley, Judge Doty stated in his opinion the following, "[T]he testimony of Mr. Daley concerning the condition of his wife after the incident and his testimony concerning his loss of consortium was rather sketchy ... The court felt, and still feels, that $5,000 was adequate for loss of consortium and the court ordered a remittitur to $5,000." In *Stoughton, supra,* this Court set forth the factors that are to be taken into account to determine whether a jury's award of damages is supported by the evidence as follows:

1) the severity of the injury;

2) whether the injury is demonstrated by objective physical evidence or subjective evidence;

3) whether the injury is permanent;

4) the plaintiff's ability to continue employment;

5) disparity between the amount of out of pocket expenses and the amount of the verdict; and

6) damages plaintiff requested in his complaint.

*Id.* 299 Pa.Super. at 503, 445 A.2d at 1242.

Applying the above factors to the instant case, we find that the testimony of Mr. Daley was indeed very sketchy. Frank Daley testified as follows in response to questions on the changes in his wife after the incident;

Q. Will you describe to us how there were differences?

A. Well, she wasn't sleeping nights. She would take her Valium to try to sleep. She would sleep half a night, toss and turn.

Q. How about household chores, cooking, washing, things of that nature? Was there any impact there?

A. She wasn't up to par there either.

THE COURT: What do you mean by up to par?

THE WITNESS: My wife's a good cook. And after that time she hardly cooked during the week. Maybe on the

weekends she would cook some. But I know I had a lot of sandwiches after April 8.

Q. Mr. Daley, was there an impact on your sexual relationship with your wife during that period of time?

A. Yes, sir. She was upset.

Q. And for how long a period did that last before that got back?

A. Well, she got somewhat better after seeing Dr. Schneimann several times.

He then went on to testify that when they went on their usual summer vacation that his wife seemed to participate in the activities as fully as in prior times. Also, there were no out-of-pocket expenses shown.

■ We have thoroughly reviewed the record and we find that we must agree with the decision of the trial judge. The testimony and the evidence produced at trial only proved that Mrs. Daley did not cook hot meals for a short period and that she was sufficiently recovered to enjoy and fully participate in a summer vacation some few months later. This does not support an award of $15,000 in compensatory damages to Frank Daley for loss of consortium. Therefore, we affirm the order of the court granting the appellee a remittitur from $15,000 to $5,000.

■ We now turn our attention to appellee's contentions on appeal. Initially, appellee contends that the trial court erred in allowing the issue of probable cause to be decided by the jury. This Court in *DeSalle v. Penn Central Transportation Co.*, 263 Pa.Super. 485, 491, 398 A.2d 680, 683 (1979), stated as follows:

The want of probable cause is a matter for the court and not the jury when there is no conflict in the evidence, or only slight differences in collateral matter.

.    .    .    .    .

It is only when there is a variance in the testimony that the jury must be utilized to determine factual issues. In such instances, the Court has two options: (1) require the jury to find a special verdict upon which the Court may

determine the existence of probable cause; or (2) *charge the jury under what combination of circumstances, which may be found under the evidence, the defendant did or did not have probable cause for initiating proceedings.* Restatement of Torts Section 673, comment d at 437 (1938), cited with approval in *Simpson v. Montgomery Ward & Co., Supra* [354 Pa. 87] at 96, 46 A.2d [674] at 678 [ (1946) ]. (Emphasis supplied).

In the instant case the testimony was in conflict from the most important aspects of the incident to the most insignificant. Therefore, in this case it was for the jury to decide whether the facts were as testified to by the appellant or by the appellee's employees. Consequently, this is a factual question to be decided by the jury, which it did in favor of the appellant.

We have also reviewed the judge's charge to the jury, and have found that it completely covered all the factors to be considered by the jury in making its decision. Therefore, we find that this contention of appellee's is without merit.

■ Appellee's next contention is that the lower court erred in permitting the appellant to amend the complaint prior to trial to include the claim for punitive damages. Amendments to pleadings are freely allowed under the Rules of Civil Procedure.[2] However, an amendment may not introduce a new cause of action after the statute of limitations has run. *Laursen v. General Hospital of Monroe County,* 494 Pa. 238, 431 A.2d 237 (1981); *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974); *Junk v. East End Fire Department,* 262 Pa.Super. 473, 396 A.2d 1269 (1978). The reason for this rule is to prevent prejudice to the adverse party. *Junk, supra.*

---

**2.** Pa.R.C.P., Rule 1033 states:

Rule 1033 Amendment

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made .to conform the pleading to the evidence offered or admitted.

The decision to grant or deny permission to amend is within the discretion of the trial court and we will reverse that decision only upon a showing of a clear abuse of discretion. *Geiman v. Board of Assessment and Revision of Taxes*, 412 Pa. 608, 614, 195 A.2d 352, 355–56 (1963).

... [A] new cause of action does not exist if plaintiff's amendment merely adds to or amplifies the original complaint or if the original complaint states a cause of action showing that the plaintiff has a legal right to recover what is claimed in the subsequent complaint. *Wilson v. Howard Johnson Restaurant*, 421 Pa. 455, 460, 219 A.2d 676, 678–79 (1966); *Arner v. Sokol*, 373 Pa. 587, 591, 96 A.2d 854, 855–56 (1953); 3 *Standard Pennsylvania Practice* 682. A new cause of action does arise, however, if the amendment proposes a different theory or a different kind of negligence than the one previously raised or if the operative facts supporting the claim are changed. 2B Anderson *Pennsylvania Civil Practice*, 66 1033.28 and 1033.31.

*Junk v. East End Fire Department, Id.* 262 Pa.Super. at 490–91, 396 A.2d at 1277.

The appellant moved to amend the complaint just prior to trial. The incident in question occurred on April 8, 1978, and the date of the amendment was April 10, 1981. This is slightly more than one year after the statute of limitations had run. However, the record reveals that the amendment did not affect the pleadings at all and in fact was only an addition to the addendum clause. When the appellant requested to amend the pleadings the discussion went as follows:

MR. FENERTY: If your Honor please, there had been some discussion on Friday as to whether or not plaintiff's complaint would lie for punitive damages. It was my position then and is now, one, that the complaint as drafted will lie for punitive damages but, two, in the event the Court decides that it does move to amend the

addendum clause of the complaint so as to specifically include the word "punitive damages."

THE COURT: Now in our off the record discussion the Court, I believe, stated that we did not think that the request for punitive damages was actually claimed in the complaint. However, you are now moving formally to amend the addendum clause to include punitive damages?

MR. FENERTY: That's correct, sir.

THE COURT: You're not amending any of the factual elements set forth in the complaint?

MR. FENERTY: That's correct, sir, I am not.

THE COURT: You're merely amending the addendum clause?

MR. FENERTY: Correct, sir.

.        .        .        .        .

MR. FENERTY: If your Honor please, it is my motion that the addendum clause be amended so as to read wherefore plaintiff's pray judgment against the defendant, John Wanamaker, Inc. for compensatory damages in excess of Fifteen Thousand Dollars and for punitive damages.

As the record illustrates, the judge questioned the appellant closely as to the content and extent of the amendment. "The right to punitive damages is a mere incident to a cause of action—an element which the jury may consider in making its determination—and not the subject of an action in itself." *Hilbert v. Roth*, 395 Pa. 270, 276, 149 A.2d 648, 652 (1959).[3] Therefore, we find that the trial judge did not abuse his discretion in permitting the appellant to amend the pleadings in such a fashion before trial.[4]

---

3. *C.F. Schneider v. Chalfonte Builders, Inc.*, 11 Bucks 122 (1962) (The right to punitive damages is a mere incident of a cause of action and is not the subject of an action in itself and a plaintiff may amend his complaint to include a prayer for punitive damages even though the statute of limitations would have then run on a new personal injury action.)

4. We are mindful that in some cases an amendment immediately prior to trial may be prejudicial to the defendant. Such an amendment does not give the defendant sufficient notice to enable him to

Appellee's final contention is that the lower court erred in charging the jury on punitive damages alleging the appellant was not entitled to punitive damages as a matter of law because appellee's behavior did not warrant the imposition of such damages. The testimony at trial was in conflict in almost every aspect. It was the decision of the fact finder as to what actually took place that day and the jury's decision indicated that it believed the testimony of the appellant to such a degree that it awarded punitive damages. As previously stated, that is the jury's prerogative.

Accordingly, as to appellant, we vacate the remittitur of the jury's award of punitive damages to the appellant and reinstate the jury's award of $30,000. The remittitur of the compensatory damages awarded to the appellant's husband is affirmed in the amount of $5,000. The appeal of the appellee is dismissed.

ROWLEY, J., files a concurring and dissenting statement.

ROWLEY, Judge, concurring and dissenting:

I join in that portion of the Court's order reinstating the jury's verdict in the amount of $30,000 for punitive damages in favor of appellant Lillian Daley. I respectfully dissent, however, from that portion of the Court's order affirming the reduction, by the trial court, of the amount of compensatory damages awarded by the jury to appellant Frank Daley. I would reinstate the jury's verdict of $15,000 in his favor.

have the requisite financial information which would be required for a proper defense to the award of punitive damages, i.e., net worth, profitability. However, that issue was not raised by the appellee and is therefore waived.