**Kaskie v. Catena**

C.P. of Allegheny County, no. GD97-782.

*Edward H. Walter,* for plaintiff.
*Korry Alden Greene,* for defendant.

O'REILLY, *J.,* May 4, 2001—This matter involves post-trial exceptions filed by the defendant, William P. Catena Jr. M.D., to a jury verdict rendered in favor of plaintiff Donald A. Kaskie and against Catena on September 28, 2000, in the amount of $500,000. This was a medical malpractice case in which Kaskie contended that

Catena failed to properly diagnose a rectal cyst which ultimately ruptured causing complications with respect to his urinary function and left him with impaired urinary function requiring him to use an implanted catheter. The case was tried before me on September 25, 2000 through September 28, 2000, and the jury verdict was returned on September 28, 2000.

Catena filed timely post-trial motions, and Kaskie filed a timely motion for Rule 238 damages. There is no opposition to the arithmetic calculation of the delay damages, and the parties agree that they amount to $112,333.78. Obviously, Catena does contest the verdict, and asserts two grounds for relief: (1) admission of Catena's medical records of treatment of Kaskie for conditions other than the condition involved herein was in error; and (2) the verdict was excessive.

The fundamental issue involved herein is one of credibility inasmuch as Kaskie asserted that when he first saw Catena on February 10, 1995, a Friday, for the pain he was experiencing in the anal and pelvic regions, Catena made no physical examination of him, gave him some antibiotics, told him to take sitz baths and to come back on Tuesday if his condition did not improve. (N.T. pp. 66-69.) In contrast, Catena testified that he did conduct a physical examination of Kaskie, thought that he might have a cyst, that he might need to be referred to a surgeon, and told him to return the very next day, which would have been Saturday. (N.T. pp. 299-304.)

Catena had very little first-hand recollection of his seeing Kaskie and relied on his medical records, which he asserted had been made contemporaneous with his treatment. (N.T. pp. 191, 192, 305.)

Kaskie contested this testimony, and the reliability of the medical records. Catena's record of this February 10, 1995 visit substantially supported his testimony at trial. However, Kaskie produced *other* medical records, kept by Catena, with respect to *other* treatment at *other* times, which raised doubt about the accuracy of those records. (Plaintiff's exhibit 2(a) through 2(l) encompasses the period June 1985 through February 15, 1995, N.T. p. 189.) Analysis of those records showed that they were written on forms provided by Formedic, a medical supplier. (N.T. p. 210.) Carmen Pereira, a representative of Formedic, testified by videotape deposition as to how and when the medical forms were produced and supplied to Catena. Her testimony showed that Catena's records were not always contemporaneous with the treatment, and in the case of these other records, the information was placed on the form a year or two after the visit. Pereira reviewed 12 instances of treatment of Kaskie, and in nine of them, the form used was dated *after* the treatment, thereby raising the inference that the written record of treatment was not made contemporaneous with the treatment and in some instances was more than a year later. (See Pereira depo., pp. 5-11.) Further, Catena offered no information or explanation for this apparent deviation between alleged time of treatment, and the date on the predated forms. Under these circumstances, I deemed this information to be relevant for purposes of impeachment, and to assist the jury in evaluating credibility.

It is the foregoing to which Catena excepts. After review, I am not persuaded that my ruling at trial was incorrect. First, bearing in mind the degree of discretion vested in the trial court with respect to admissibility of

evidence, I believe that the disparity between date of treatment and date of recordation was a significant factor for the jury to consider, particularly when there was a dispute as to what treatment was actually given on the day in question.

While I am mindful that Catena argues that these medical records do not involve treatment for the rectal cyst, I do believe that other evidence relevant to the question of credibility should not be excluded simply because it occurred sometime prior to the event that gave rise to the lawsuit. It is well established that evidence relevant to an issue and having probative value is usually admissible. See *Hatfield v. Continental Imports Inc.,* 530 Pa. 551, 610 A.2d 446 (1992).

The other issue raised by Catena is that the verdict was excessive. For that proposition he relies on the fact that the medical expenses for Kaskie were only $17,085.16 and that the wage loss was $95,645. He cites *Stoughton v. Kinzey,* 299 Pa. Super. 499, 445 A.2d 1240 (1982) for six factors that should be considered when addressing the issue of remittitur. I have considered the factors set forth therein and I am not persuaded that I should substitute my judgment for that of the jury. Our Supreme Court has recently reiterated that a trial court should not substitute its judgment for that of a jury. See *Martin v. Evans,* 551 Pa. 496, 711 A.2d 458 (1998).

Here we have a situation that has created a radical change in Kaskie's urinary function, not to mention the attending embarrassment and humiliation. He was only 47 years old at the time of the injury, and will carry this limitation probably for the rest of his life. In this respect, the defense attempted to suggest that his reluctance to

have any further surgery, which *might,* but could not *guarantee,* improvement should be considered by me. Catena has argued that no medical procedure is guaranteed. The videotape deposition testimony of Kaskie's treating urologist, Dr. Louis Brandstetter, was offered and he testified that a surgical repair of the urinary problem would not be a simple procedure and it may not bring any improvement. (See Brandstetter depo., pp. 15-20.) He also said he had not pushed Kaskie to have the surgery because it was not simple and "the results may not be any better than what he has at the present time." (Brandstetter depo. p. 16.) Under these circumstances, Kaskie's reluctance to have no more surgery is not unreasonable.

Moreover, the mere fact of the operation and the attendant anesthesia, which in itself is a life-threatening event in my mind, is a relevant and reasonable consideration for Kaskie. Finally, this verdict does not shock my conscience, and I find no basis to reduce it.

Accordingly, I deny the relief sought by Catena, and confirm the original verdict of $500,000, and mold the verdict to add the delay damages of $112,333.78 for a total jury verdict of $612,333.78.